UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DOMINIQUE M.,                                                    Case No. 3:23-cv-00357-AR

                  Plaintiff,                                       OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                  Defendant.

_____

**ARMISTEAD, Magistrate Judge**

      In this judicial review of the Commissioner's final decision denying Social Security

benefits, plaintiff Dominique M. (their last name omitted for privacy) challenges the

Administrative Law Judge's (ALJ) evaluation of the relevant medical opinions and their

subjective symptom testimony. Because the court finds the ALJ's decision is a reasonable

Page 1 – OPINION AND ORDER

reading of the record and is based on substantial evidence, the Commissioner's decision is AFFIRMED.[1]

## ALJ'S DECISION

Plaintiff applied for Title XVI Social Security Income (SSI) on March 23, 2020, alleging disability beginning January 1, 2020. (Tr. 371.) Their claim was initially denied on October 13, 2020, and again upon reconsideration on February 23, 2021. (Tr. 206, 225.) Afterward, plaintiff filed for a hearing that was held before the ALJ on June 16, 2022. (Tr. 155.)

In denying plaintiff's application, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined plaintiff had not engaged in substantial gainful activity since January 24, 2020, their application date. (Tr. 158.) At step two, the ALJ determined that they had the following severe impairments: post-traumatic stress disorder, anxiety, depression, schizoaffective disorder, avoidant/restrictive food intake disorder, brief psychotic disorder, depersonalization/derealization disorder, adjustment disorder, and borderline personality disorder. (Tr. 158.) At step three, the ALJ determined that their impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 158.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. § 416.945, the ALJ determined that plaintiff can perform the full range of work at all exertional levels, with the following non-exertional limitations:

---

[1]    This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]    To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

[they] can understand, carry out and remember simple instructions. [They] can make commensurate work-related decisions and respond appropriately to supervision, co-worker, and work situations. [They] can deal with routine changes in work setting. [They] can maintain concentration, persistence and pace for up to and including two hours at a time with normal breaks throughout a normal workday. [They are] suitable for work requiring only occasional[] changes in the work setting. [They are] suitable for jobs requiring no interaction with the public. [They] can be around co-workers throughout the workday but should be required to have only occasional interactions with them.

(Tr. 161.)

At step four, the ALJ determined that plaintiff has no past relevant work. (Tr. 165.) In light of their RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as kitchen helper, linen room attendant, and marker. (Tr. 166.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

A.    ***Medical Opinion Evidence***

The regulations require that an ALJ evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 416.920c. The ALJ must

Page 3 – OPINION AND ORDER

"articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 416.920c(b)(2)). Supportability is determined by whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 416.920c(c)(2).

### 1. Dr. Lozada-Murray's opinion

In May 2020, treating psychologist Susana Lozada-Murray, Psy.D., provided a medical opinion and mental RFC (MFRC) in support of plaintiff's disability claim. (Tr. 667-68; 671-77.) Dr. Lozada-Murray diagnosed plaintiff with panic disorder and borderline personality disorder; opined that plaintiff "tends to blame [their] psychiatric condition and magnify the severity of [] psychotic symptoms" when they fail to complete their responsibilities; and assessed plaintiff's symptoms as moderately affecting their day-to-day life. (Tr. 667, 671.) She further assessed plaintiff with marked limitations in activities of daily living, social functioning, and concentration, persistence, and pace. (Tr. 676.)  Finally, Dr. Lozada-Murray opined by that plaintiff would likely miss three days of work each month. (Tr. 674.)

Plaintiff argues that the ALJ's failure to discuss Dr. Lozada-Murray's opinion that their borderline personality disorder manifests in exaggeration of their symptoms as a maladaptive coping mechanism was a failure to properly evaluate Dr. Lozada-Murray's medical opinion.[3]

---

[3]     Plaintiff's arguments regarding Dr. Lozada-Murray's opinion and plaintiff's borderline personality disorder diagnosis are difficult to follow. Plaintiff's assertion about Dr. Lozada-Murray's concern for their symptom magnification caused by that diagnosis is addressed by the court in the section about plaintiff's subjective symptom testimony.

According to plaintiff, the limitation assessed by Dr. Lozada-Murray that plaintiff will miss more than three days of work per month is not adequately accounted for in the RFC. Plaintiff further argues that the ALJ failed to adequately address the supportability and consistency of Dr. Lozada-Murray's opinion, and instead conducted "a misplaced SSR 16-3p consistency analysis." (Pl. Br. at 12.)

The ALJ found Dr. Lozada-Murray's opinion unpersuasive because, "although supported by some explanation," the ALJ found the limitations assessed by Dr. Lozada-Murray were inconsistent with the medical and other evidence of record. (Tr. 164.) For example, the ALJ found Dr. Lozada-Murray's "assessments of marked limitations and absenteeism" to be inconsistent with evidence showing plaintiff's ability to "earn some money with their artwork" and to "move in with their partner." (Tr. 164.) Additionally, the ALJ noted that plaintiff "managed without psychiatric treatment for as long as six months." (Tr. 164.) Finally, the ALJ stated that plaintiff's "improved conditions, when on medications, do not warrant marked limitations." (Tr. 164.)

As a preliminary matter, SSR 16-3p governs the evaluation of a claimant's symptom testimony and does not provide a framework for evaluating the supportability or consistency of medical opinions. Supportability and consistency are governed by 20 C.F.R. § 416.920c(c)(1)-(2). The court thus construes plaintiff's contention that the ALJ conducted a misplaced SSR 16-3p consistency analysis to mean that the ALJ erred in relying on plaintiff's daily activities in addition to, or in lieu of, medical evidence when evaluating the consistency of Dr. Lozada-Murray's opinion. As noted above, however, an ALJ may consider medical and nonmedical evidence when evaluating the consistency of medical opinions. 20 C.F.R. § 416.920c(c)(2). The

ALJ therefore did not err in considering plaintiff's daily activities when evaluating Dr. Lozada-Murray's opinion.

As to supportability, the ALJ's rejection of the limitations assessed by Dr. Lozada-Murray is reasonable. For example, Dr. Lozada-Murray assessed plaintiff with marked limitations in activities of daily living and social functioning but provided no explanation and no objective evidence to support her conclusion. (Tr. 676.) *See* 20 C.F.R. § 416.920c(c)(1) (stating that persuasive medical opinions are supported by objective medical evidence and supporting explanations). An ALJ may reject a medical opinion if it is "brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)); *see also Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020) (ALJ did not err in rejecting medical opinions that were unsupported by the objective medical evidence (citing *Batson*, 359 F.3d at 1195)); 20 C.F.R. § 416.920c(a) (supportability is most important factor in considering persuasiveness of medical opinion). Upon a complete review of the record, the court can find no treatment notes or objective evidence from Dr. Lozada-Murray to support her opinion, beyond the opinion itself.

Nor are the marked limitations assessed by Dr. Lozada-Murray consistent with the record. Indeed, objective medical evidence shows largely normal mental status exams, and plaintiff's own statements to providers of improved symptoms and manageable symptoms further support the conclusion that Dr. Lozada-Murray's opinion is not consistent with the medical evidence of record. (Tr. 496, 501, 505, 517, 523, 684, 822, 845, 851.) Moreover, plaintiff's ability to function without psychiatric treatment for six months is inconsistent with the marked limitations assessed by Dr. Lozada-Murray. In sum, the ALJ did not err in finding Dr. Lozada-Murray's medical opinion unpersuasive. The ALJ supported his conclusions with

Page 6 – OPINION AND ORDER

substantial evidence. *See Brown-Hunter*, 806 F.3d at 492 ("[A]lthough we will not fault the agency merely for explaining its decision with less-than-ideal clarity, we still demand that the agency set forth the reasoning behind its decisions in a way that allows meaningful review." (citing *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)).

Plaintiff's arguments that the ALJ should have accounted for limitations assessed by Dr. Lozada-Murray in the RFC – such as being absent three days per month – fail because the ALJ is only required to include those limitations that are found to be credible and supported by the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); SSR 96-8p. Although plaintiff disagrees with the ALJ's analysis, the ALJ's findings are fully supported by substantial evidence, are a reasonable interpretation of that evidence, and therefore must be upheld. *Ford*, 950 F.3d at 1154.

## 2. Agency Doctors' Opinions

State certified psychologists (agency doctors) evaluated plaintiff's medical records in connection with application for benefits, both initially and on appeal. (Tr. 206, 225.) Plaintiff now challenges the ALJ's supportability and consistency analysis of the agency doctors' opinions. Additionally, plaintiff argues that the ALJ erroneously failed to adopt the limitations opined by the agency doctors into the RFC because the ALJ did not include in the RFC the limitation to "performing simple and routine tasks in a socially limited setting." (Pl. Br. at 8, 9.) Finally, plaintiff alleges that the ALJ failed to explain how the RFC limitation to unskilled work accounts for their moderate limitations in concentration, persistence, and pace, and mild limitations in understanding, memory, and applying information. (Pl. Br. at 9.)

The agency doctors determined that plaintiff has mild limitations in understanding, remembering, and applying information; moderate limitations in interacting with others;

moderate limitations in concentration, persistence, and pace; and moderate limitations in their ability to adapt and manage. (Tr. 201-02; 219-21.) In the narrative explanation for these limitations, the agency doctors stated that plaintiff had no significant difficulty recalling, understanding, and carrying out instructions, and is capable of completing simple instructions, plaintiff has moderate difficulty maintaining concentration for extended periods, moderate difficulty interacting appropriately with others, and moderate difficulty adapting to workplace changes or stress. (Tr. 221-22.) The agency doctors' MRFC states that plaintiff is capable of performing "simple and routine tasks in a socially limited setting," and their activities of daily living, recent work, and medical evidence of record confirms they can perform semi-skilled, and some complex tasks. (Tr. 164-65, 203, 222.)

Those opinions from the agency doctors were found persuasive by the ALJ: "These opinions are supported by explanation, as set forth under the psychiatric review technique analysis, and were consistent with the medical evidence of record." (Tr. 165.) The ALJ noted that plaintiff's "difficulty concentrating due to hallucinations and self-consciousness with body presentation are consistent with limitations in concentration and interactions with others." (Tr. 165, citing Tr. 515, and Hearing Testimony.) The ALJ concluded that the agency doctors' opinions were accounted for in the RFC determination. (Tr. 165.)

The ALJ's supportability determination relies on the psychiatric review technique analyses performed by the agency doctors, which the ALJ discussed in both the mental health and medical opinion sections of the decision. (Tr. 160, 165.) In the analyses, the agency doctors reviewed the medical evidence in record, provided opinions as to plaintiff's limitations, provided explanations as to why those limitations are appropriate, and cited objective evidence to support their conclusions. (Tr. 199-200, 215-217.) The court concludes that the ALJ's determination

Page 8 – OPINION AND ORDER

about the supportability of agency doctors' opinions is supported by substantial evidence. *See* 20 C.F.R. § 416.920c(c)(1) ("[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be"). Because the court can reasonably discern the ALJ's path, the ALJ did not err. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

Next, contrary to plaintiff's suggestion, there is no requirement that an ALJ must perform a medical opinion-by-medical opinion consistency comparison. Rather, the ALJ must show how an opinion is consistent with the evidence from other medical and nonmedical sources in the record and resolve any conflicts between the credited medical opinions. 20 C.F.R. § 416.920c(c)(2). The ALJ's consistency analysis does that by identifying areas where the plaintiff's medical records are consistent with the agency doctors' analyses. (*See* Tr. 491, 495, 500, 517, 522, 523, 515, 684.) Again, the ALJ did not err because the court can reasonably discern the ALJ's consistency determination.

As to plaintiff's claim that the ALJ was required to adopt the agency doctors' limitation to simple and routine tasks in a socially limited setting, the Ninth Circuit does not require that an ALJ adopt word-for-word the limitations set forth by a medical source opinion, so long as the ALJ's RFC is "consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Here, the RFC limitations align with the restrictions in the agency doctors' opinions. For example, the ALJ limited plaintiff to understanding, carrying out, and remembering simple instructions, which mirrors language used by agency doctors. (Tr. 164, 222.) That the ALJ did not further limit plaintiff to "simple routine tasks" is supported by the agency doctors' findings that plaintiff is capable of "semi-skilled, and

Page 9 – OPINION AND ORDER

some complex tasks." (Tr. 222.) Additionally, the ALJ limited plaintiff to maintaining

concentration, persistence, and pace for up to two hours at a time, which is consistent with the

agency doctors' finding of a moderate limitation in their ability to maintain concentration for

extended periods. (Tr. 161, 222.) The ALJ limited plaintiff to jobs requiring no interaction with

the public and only occasional interactions with co-workers, which also is consistent with the

agency doctors' finding of a moderate limitation in their ability to interact appropriately with

others. (Tr. 164, 222.) The ALJ further limited plaintiff's RFC to include only occasional

changes in the work setting, which is consistent with a moderate limitation in adapting to

workplace change or stress. (Tr. 164, 222.)

Plaintiff's final point that the ALJ failed to explain how the limitation to unskilled work

accounts for moderate limitations in concentration, persistence, and pace, and mild limitations in

understanding, memory, and applying information is similarly foreclosed because the limitation

to unskilled work is based on their having no prior work experience, not their moderate and mild

limitations. (Pl. Br. at 9.) *See* 20 C.F.R. § 416.965(a) (stating that, even if an individual has no

work experience, they may still be able to do unskilled work because it requires little or no

judgment and can be learned in a short period of time). Additionally, their moderate limitations

in concentration, persistence, and pace were sufficiently accounted for in the RFC, and mild

limitations in understanding, memory, and applying information do not require specific findings

in the RFC. *See Woods*, 32 F.4th at 794 (confirming mild non-exertional limitations resulting do

not require express findings in the RFC). Therefore, the court finds no error in the ALJ's

analysis.

Page 10 – OPINION AND ORDER

B.          *Plaintiff's Symptom Testimony*

Plaintiff contends that they cannot engage in full-time, competitive employment due to symptoms resulting from their mental health impairments. In May 2020, plaintiff completed both an anxiety questionnaire and an adult function report in support of their SSI application. (Tr. 421, 424.) Their daily activities included completing household chores, grocery shopping, preparing meals, vacuuming, and doing laundry on a weekly basis. (Tr. 426-27.) They needed verbal reminders to complete household chores. (Tr. 426.) Plaintiff wrote that they had experienced "50-60" anxiety attacks in the preceding three-month period, and that each anxiety attack last "3-4 hours." (Tr. 422.) They further stated that during anxiety attacks, their "hallucinations get worse," they "can't stop shaking" and believe they will die if they "do anything." (Tr. 422.) Plaintiff said that loud noises and bright lights trigger anxiety. (Tr. 424.)

At the hearing, plaintiff explained that they have been unable to apply for work due to anxiety and "going catatonic" when attempting to fill out application paperwork. (Tr. 180.) Plaintiff stated that they have a driver's license but they "don't drive any at all." (Tr. 183.) They lost their last job due to "being unable to come in" and the "stress of [the] job making [them] go catatonic for sometimes hours." (Tr. 183.) Plaintiff relied on their partner for reminders to shower and brush their teeth. (Tr. 184-85.) They had a strict daily routine but sometimes cannot "follow through with it" because of their mental illness. (Tr. 185.) They experienced audio and visual hallucinations "all the time" despite having "never missed a dose" of prescribed medications. (Tr. 186-87.) Ultimately, plaintiff said that, although they would like an office job, they are "not reliable enough" because they are "too sick." (Tr. 188.)

Determining the credibility of a claimant's symptom testimony requires two steps of analysis from the ALJ. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). At the first step,

Page 11 – OPINION AND ORDER

the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler*, 775 F.3d at 1102; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second step, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter*, 806 F.3d at 488-89; 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ discounted plaintiff's subjective symptom testimony because: (1) their medical history showed improvement with treatment; (2) their activities of daily living were inconsistent with the severity of their symptoms; and (3) objective medical findings were inconsistent with their reported symptomatology. Plaintiff challenges each reason.

### 1. Evidence of Improvement with Treatment

Plaintiff contends that the ALJ did not explain how their hallucinations improving with medication relates to their "borderline personality disorder and its symptoms[.]" (Pl. Br. at 14) (emphasis omitted). Because their borderline personality disorder has not improved, plaintiff contends, the ALJ's rationale is not clear and convincing. In plaintiff's view, the ALJ was required to specifically discount symptoms stemming from their borderline personality disorder or include them in the RFC. The court disagrees.

An ALJ may consider evidence of improvement when assessing the functional limitations of a claimant. 20 C.F.R. § 416.920a(c). However, an ALJ may not rely on "a few isolated instances of improvement in the medical record as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017 (citation omitted). Mental health symptoms wax and wane, and an ALJ commits reversible error by cherry-picking the record for facts that support a non-disability determination. "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the [claimant's] overall well-being and the nature of her symptoms." *Id.* (citing *Ryan v. Comm's of Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008)); *see also Attmore v. Colvin*, 827 F.3d 872, 877-79 (9th Cir. 2016) (holding the ALJ erred by finding improvement where claimant continued to have functional impairments and improvement was not sustained). Yet symptoms may improve with treatment. "With adequate treatment some individuals with chronic mental disorders not only have their symptoms and signs ameliorated, but they also return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorders." 20 C.F.R. pt. 404, subpt. P, app. 1 (2014). Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. *See* 20 C.F.R. § 416.920a(c)(1); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling.") (citations omitted).

In this case, the ALJ discounted the severity of plaintiff's alleged symptoms because medical records showed that their symptoms improved with treatment. In July 2019, plaintiff reported having better energy and being "happy at [their] new job." (Tr. 163, citing Tr. 510.) Almost a year later, in June 2020, plaintiff reported feeling "more stable." (Tr. 682-83.) And, in September 2020, the ALJ noted plaintiff had reported "stable mood," feeling "happy and

optimistic" and that their verbal and auditory hallucinations were "not severe." (Tr. 163, 697, 704.) The ALJ observed that plaintiff moved to Oregon in October 2020 to live with their partner, and thereafter, took a months-long break from care, resuming psychiatric care in 2021. (Tr. 163, 912, 925.) The ALJ cited records showing plaintiff continued to report improved symptoms throughout 2021 into 2022, most notably that they had better concentration, that they were getting enough sleep, their audio hallucinations had improved, and that they had good energy. (Tr. 164, 744, 750, 796, 791, 851.) Those improvements are substantial evidence, a reasonable interpretation of the record, and will not be disturbed. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Aside from Dr. Lozada-Murray's opinion, plaintiff fails to identify evidence the ALJ was required to incorporate not already accounted for in their RFC. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (expressing that the party challenging the ALJ's decision bears the burden of showing harm). Here, plaintiff broadly alleges that symptoms described in Dr. Lozada-Murray's testimony should be attributed to their borderline personality disorder, and that the RFC does not sufficiently include those symptoms. But as discussed above, the ALJ properly discredited Dr. Lozada-Murray's opinion and the ALJ was not required to incorporate her assessed limitations into the RFC. The RFC does address the limitations from credited medical opinions, such as limiting plaintiff's concentration time to two hours, and limiting their exposure to the public and coworkers.

Furthermore, in evaluating symptom testimony, the ALJ is required to identify specific testimony in the record and evaluate whether that testimony is consistent with record. As such, it is sufficient that the ALJ cited specific evidence of improvement with treatment such that the court can meaningfully review the ALJ's decision for error. *Brown-Hunter*, 806 F.3d at 492.

Page 14 – OPINION AND ORDER

Moreover, the ALJ considered the waxing and waning nature of plaintiff's illnesses and provided examples of improved symptoms throughout the adjudicatory period, rather than isolating one specific period of improvement. *Garrison*, 759 F.3d at 1017. In reviewing the record, the ALJ reasonably concluded that plaintiff's symptoms improved with treatment. The court finds that the ALJ did not err in finding plaintiff's symptoms improved with medical treatment.

### 2. Activities of Daily Living

An ALJ may reject symptom allegations that are inconsistent with a claimant's ability to perform normal activities of daily living. *See* 20 C.F.R. § 416.929(c)(3)(i). There are two ways ADLs may support such rejection: (1) the ADLs contravene the claimant's allegations of functional limitations; or (2) the ADLs "meet the threshold for transferrable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally disabling impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

Plaintiff challenges the ALJ's discounting of their symptom testimony based on their daily life activities on the ground that he failed to explain how "moving once or selling art in [] isolated instances are activities that are 'inconsistent' with a marked limitation" in "activities of daily living." (Pl. Br. at 14.)  As with plaintiff's contentions about their bipolar disorder, the assessment of a marked limitation in ADLs comes only from Dr. Lozada-Murray's opinion. (Tr. 682, 159-60.) As discussed above, because the ALJ appropriately discredited that opinion, the ALJ was not required to explain how plaintiff's activities of daily living are inconsistent with those assessed limitations.

The ALJ found that plaintiff's daily activities exceeded their claimed functional limitations. The ALJ noted that plaintiff can do regular household chores such as vacuuming, laundry, driving, shopping for groceries. (Tr. 159, 164.) The ALJ pointed out that, despite plaintiff's alleged symptoms, they were able to successfully visit and then move from Florida to Oregon to live with their partner. (Tr. 164.) Additionally, the ALJ pointed out that plaintiff had been able to "earn some money for a period of time" doing freelance artwork. (Tr. 163, 164, citing Tr. 845, 851, 856, 864.)

The analysis that an ALJ must undergo when considering activities of daily living is whether the activities contravene the attested limitations *or* meet the threshold of transferrable work skills. *Orn*, 495 F.3d at 639. Here, plaintiff alleged they experience debilitating symptoms, such that they cannot function at even the most basic level. The ALJ's rationale need only show that their daily activities exceed their claimed limitations and is backed by substantial evidence. Here, the ALJ provided clear and convincing reasons supported by substantial evidence for discounting the alleged severity of plaintiff's symptom testimony, and as such, did not err.

### 3. Inconsistency with Objective Medical Evidence

Plaintiff asserts that the ALJ's analysis of the objective medical evidence "did not explain the extent to which [plaintiff's] subjective symptoms limit[ed] [their] ability to perform work-related activities" as required by SSR 16-3p. (Pl. Repl. Br. at 10-11.)  According to plaintiff, their symptom exaggeration is a maladaptive coping mechanism of their borderline personality disorder. In plaintiff's opinion, the ALJ's decision erroneously "relies on a finding that [they] exaggerate their symptoms" and "improved with medication," thus falling short of the clear and convincing standard required under Ninth Circuit law. (Pl. Br. at 15, Pl. Repl. Br. at 11.)

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. A lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *See Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). But when coupled with other permissible reasons, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)); *see also Adaline S.G. v. Comm'r Soc. Sec. Admin.*, Case No. 6:20-cv-01129-AC, 2021 WL 5316987, at *3 (D. Or. Nov. 15, 2021); *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019).

That happened here. The ALJ discussed inconsistencies between plaintiff's alleged symptoms and the objective medical evidence. The ALJ reasoned that, although "evidence undoubtedly shows psychiatric impairments," ultimately the "course of treatment and diagnostic tests and examination results do not appear to be commensurate with the symptomatology reported." (Tr. 164.) Also noted by the ALJ was that plaintiff's doctor "expressed concern about [plaintiff] magnifying the severity of their symptoms. (Tr. 164, citing Tr. 667.) The ALJ then pointed out that plaintiff had largely normal objective findings at medical appointments. (Tr. 163-64, 159; citing Tr. 495, 500, 517, 522, 523, 684, 822, 845, 851.) For example, therapy notes show plaintiff had logical thought process and "good comprehension with abstract thinking" (Tr. 495); intact memory, fair concentration, good insight, and judgment (Tr. 500); and grooming that was described as "appropriate, neat and clean" (Tr. 522). Additionally, the ALJ noted that

plaintiff "could manage their psychosis with no medication side effects." (Tr. 163, citing Tr. 744, 750.)

The ALJ properly considered the extent to which plaintiff's symptoms limit their ability to work. The ALJ determined that, although "evidence undoubtedly shows psychiatric impairments that more than minimally impact[] [their] functioning," the evidence also showed improved conditions. (Tr. 164.) The ALJ therefore concluded that, because evidence was consistent with "some limitations," those limitations had been "properly accommodated for" by the mental limitations in the RFC. (Tr. 164.) Additionally, although the ALJ cited a treating provider's concern that plaintiff magnifies their symptoms, it is clear to the court that the ALJ relied on more than a single statement in concluding plaintiff's records do not reflect the degree of symptoms alleged. (Tr. 164.) The ALJ appears to have properly consulted the entire record, cited to specific examples, and concluded that plaintiff's symptoms were less limiting than alleged. In short, the ALJ provided specific, clear, and convincing reasons to discount plaintiff's subjective symptom testimony.

In summary, the ALJ's conclusions as to plaintiff's symptom testimony and the medical opinions are based on substantial evidence and supported by reasonable references drawn from the record.

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

## CONCLUSION

For the above reasons, the court AFFIRMS the Commissioner's final decision.

DATED: September 24, 2024.

_____
JEFF ARMISTEAD
United States Magistrate Judge